UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

THOMAS LYNCH,                )
                             )
    Plaintiff,            )     Case No. 3:05-0955
                             )     Judge Trauger
v.                           )
                             )
FORD MOTOR COMPANY,          )
                             )
    Defendant.            )

## MEMORANDUM

The defendant has filed a Motion for Summary Judgment (Docket No. 19), to which the plaintiff has responded (Docket No. 23), and the defendant has replied (Docket No. 28). For the reasons discussed herein, the defendant's motion will be granted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Thomas Lynch, a longstanding employee of defendant Ford Motor Company, was given an incorrect estimate of his potential monthly pension benefits when he was determining whether to accept early retirement.[1] Mr. Lynch accepted the defendant's early retirement offer effective March 1, 2003 only to receive, several months later, a substantially reduced monthly benefit. In the following months, Mr. Lynch struggled to determine why he was not receiving the monthly payments he had expected to receive. Mr. Lynch now understands that he has been receiving the correct monthly benefits as calculated by the

---

[1] Unless otherwise noted, the facts have been drawn from the plaintiff's Complaint (Docket No. 1), the plaintiff's Response to Defendant's Statement of Material Facts (Docket No. 25), and the plaintiff's Response in Opposition to Motion for Summary Judgment (Docket No. 37).

1

applicable pension plans. However, Mr. Lynch seeks to receive the amount that he expected when he retired, and he has filed suit under a variety of legal theories on that basis.

Mr. Lynch is currently receiving benefits under two different retirement plans. For the great majority of his thirty-year career, Mr. Lynch was an hourly employee and so, under the Ford-UAW Retirement Plan for Hourly Employees, Mr. Lynch is entitled to receive $2,730 per month. Mr. Lynch will continue to receive that amount until he reaches the age of sixty-two and one month, or until the date he is awarded unreduced Social Security benefits[2]. At that time, Mr. Lynch will receive $1,466.21 under the Ford-UAW Plan. Mr. Lynch was at all times given a correct estimate for his benefits under this plan, and does not request any relief under it.

In addition, because Mr. Lynch held a salaried position for some period of time no greater than one year[3] during his career, he is also eligible for benefits under the Ford Motor Company General Retirement Plan. It was the monthly benefit for this plan that was calculated incorrectly when Mr. Lynch first requested an estimate. Mr. Lynch was originally told that he would receive $2,767.46 per month under the General Retirement Plan, until he reached the age of sixty-two, or until he was awarded unreduced Social Security benefits[4], at which time it would

---

[2]The plaintiff's response refers to "Social Security Disability benefits" instead of "Social Security benefits." (Docket No. 24 at p. 2). The court presumes that the inclusion of the word "Disability" is a typographical error. In any case, this has no bearing upon the issues before the court.

[3]The defendant alleges that the plaintiff held a salaried position for one six-month period. The plaintiff, at his deposition, stated that he held the position for "probably about a year. Maybe give or take a few months." (Docket No. 25 at p. 2).

[4]Once again, in reference to this plan as well as the above plan, the plaintiff's response refers to "Social Security Disability benefits" instead of "Social Security benefits" (Docket No. 24 at p. 2) and, once again, the court presumes that the inclusion of the word "Disability" is a typographical error.

be reduced to $22.97. However, Mr. Lynch has received only $22.97 per month on this plan since his retirement. Mr. Lynch does not dispute that $22.97 per month is, in fact, the correct amount owed to him under the General Retirement Plan.

Soon after receiving his first retirement check, Mr. Lynch contacted the defendant's National Employee Service Center ("NESC") to inquire about the discrepancy but was not given a full explanation. Mr. Lynch called several more times over the following year. He was told that his benefit would be recalculated and that someone would get back to him. However, Mr. Lynch alleges that nobody ever got back to him and that it was never explained to him that the original estimate had been incorrect.

On September 3, 2004, Mr. Lynch's attorney sent a letter to the defendant's Office of General Counsel requesting that the office "facilitate matters" regarding the discrepancy in payment. (Docket No. 20, p. 26). In addition, the letter requested that the Office of General Counsel "forward a copy of the Plan Documents applicable to Mr. Lynch's retirement." The defendant denies having received the letter.

On November 4, 2005, the plaintiff filed this action, alleging (1) violation of the Employee Retirement Income Security Act ("ERISA"), (2) breach of contract, (3) promissory estoppel, (4) unjust enrichment and (5) misrepresentation and negligent misrepresentation. (Docket No. 1) On August 21, 2006, the defendant moved for summary judgment. (Docket No. 23). In his response brief, the plaintiff abandoned his state law claims, conceding that those claims are preempted by ERISA, and now alleges only ERISA claims for (1) breach of fiduciary duties and (2) failure to provide requested information.

## ANALYSIS

**I.	Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must demonstrate the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Our function "is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case—provided that the nonmoving party bears the burden for that element—the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To avoid summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). And we must keep in mind that "[t]he mere existence of a scintilla of evidence in support of the [nonmoving

4

party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. Finally, "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49). With this standard in mind, the court turns to an analysis of the plaintiff's claims.

## II.     Breach of Fiduciary Duties under ERISA

The plaintiff alleges that the defendant breached its fiduciary duties by failing to give complete and accurate information to the plaintiff when he was determining whether to accept early retirement. The plaintiff alleges that the defendant's representations regarding the plaintiff's estimated benefits were "materially misleading," giving rise to a cause of action under 29 U.S.C. § 1104(a)(1). *See Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 432 (6th Cir. 2006) ("Misleading communications to plan participants regarding plan administration (for example, eligibility under a plan, the extent of benefits under a plan) will support a claim for breach of fiduciary duty.")

The plaintiff's cause of action for breach of fiduciary duty would probably survive summary judgment except for the fact that ERISA does not, as a matter of law, afford the plaintiff the relief he has requested. Section 502(a)(3) of ERISA authorizes a civil action:

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable

5

>relief (i) to redress such violations or (ii) to enforce any provision of . . . the terms of the plan.

29 U.S.C. § 1132(a)(3). The Supreme Court has held that "the term 'equitable relief' in § 502(a)(3) must refer to 'those categories of relief that were *typically* available in equity . . . .'" *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (quoting *Mertens v. Hewitt Associates*, 508 U.S. 248, 256 (1993)) (emphasis in original). Further, "'[a]lmost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages' . . . since they seek no more than compensation for loss resulting from the defendant's breach of legal duty.'" *Crosby v. Bowater Inc. Retirement Plan for Salaried Employees of Great N. Paper, Inc.*, 382 F.3d 587, 597 (6th Cir. 2004) (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-919 (1988) (Scalia, J. dissenting), as quoted with approval in *Great-West*, 534 U.S. at 210). "[M]oney damages," as the Supreme Court has held "'are, of course, the classic form of legal relief.'" *Great-West*, 534 U.S. at 210 (quoting *Mertens*, 508 U.S. at 255).

In *Great-West*, the petitioners sought an injunction ordering the respondents to reimburse an ERISA plan, arguing that the reimbursement was required by the plan's terms. *Id*. However, as the Supreme Court noted, "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity," and therefore, it was not authorized under ERISA. *Id*. at 210-211. In the alternative, the petitioners in *Great West* sought to fashion their remedy as restitution. *Id.* at 212. However, that avenue was also foreclosed because "not all relief falling under the rubric of restitution is available in equity." *Id*. Instead, the Court noted that, in the days of the divided bench, monetary restitution was available in courts of equity only "in the form of a constructive trust or

an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Id*. at 214. Therefore, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id*. Because no particular funds could be identified, no equitable relief was available. *Id*. at 214-215; *see also Crosby*, 382 F.3d at 587 (holding that a request for securitization of the debt at issue cannot "transmogrify [the plaintiff's] claim for a money judgment into an essentially equitable claim"); *Allinder v. Inter-City Products Corp.*, 152 F.3d 544, 552 (6th Cir. 1998) (holding that an action for compensatory damages under § 1132(c) was properly dismissed "because the form of remedy sought [was] not available to [the plaintiff] as a matter of law").

In *Ramsey v. Formica Corp.*, No. 1:04-CV-149, 2004 WL 1146334 at *3-4 (S.D. Ohio April 6, 2004), the district court addressed a set of facts almost identical to those in this case. In *Ramsey*, the plaintiffs, on behalf of a putative class, sought a temporary restraining order to restore their monthly pension payments to the amount that their employer, the defendant, had originally represented that they would receive. *Id*. at * 2. The original representation had been based on a miscalculation. *Id*. Although the plaintiffs had styled their remedy in injunctive form, as an action for equitable estoppel and negligent misrepresentation, those labels did not actually apply to the plaintiffs' cause of action. *Id*. Therefore, the only potential avenue for relief was for breach of fiduciary duty under § 1132(a)(3). *Id*. at *3. However, citing *Great West*, the court noted that, under § 1132(a)(3), "only those categories of relief traditionally available in equity" are available. *Id*. at 4. Although the plaintiffs had sought an injunctive

7

remedy, the court held that "what they really want is to continue to be paid the monthly amount they were promised. In other words, [the plaintiffs] seek to recover their reliance interest . . . ." *Id*. Because the ultimate relief sought be the plaintiffs was monetary in nature, and because there were no identifiable funds for purposes of equitable restitution, the court held that there was no likelihood of success on the merits, ultimately denying the plaintiffs' request for a temporary restraining order. *Id*.; *see also Helfrich v. PNC Bank, Kentucky Inc.*, 267 F.3d 477, 482-83 (remanding an action under § 1132(a)(3), with instructions to dismiss with prejudice, where the relief requested was unavailable because it did not qualify as "appropriate equitable relief" under ERISA).

The plaintiff in this case has requested the following forms of relief: (1) a declaratory judgment that the defendant's actions are illegal and in violation of ERISA, (2) a permanent injunction barring the defendant from engaging in any unlawful practices under ERISA, (3) damages in the amount of the funds the plaintiff expected to receive upon retirement, (4) other monetary damages, (5) statutory penalties, and (6) other forms of relief, such as litigation costs and attorney's fees, which are not appropriate in this case. (Complaint, Docket No. 1)

Inasmuch as the plaintiff is requesting monetary damages to recoup his reliance or his expectation interests in the defendant's original estimates, no such forms of relief are available to him under ERISA's statutory provisions. *See Great-West*, 534 U.S. at 210. Recent precedent is quite clear that the plaintiff simply cannot recoup the monetary damages he has requested through ERISA. *Crosby*, 382 F.3d at 597.

Inasmuch as the plaintiff seeks a general injunction or declaratory relief, prohibiting the plaintiff from future violations of ERISA, no such relief is available either. As the Supreme

8

Court has stated:

> The sole function of an action for injunction is to forestall future violations. It is so unrelated to punishment or reparations for those past that its pendency or decision does not prevent concurrent or later remedy for past violations by indictment or action for damages by those injured. All it takes to make the cause of action for relief by injunction is a real threat of future violation or a contemporary violation of a nature likely to continue or recur. This established, it adds nothing that the calendar of years gone by might have been filled with transgressions.

*United States v. Oregon State Medical Soc.*, 343 U.S. 326, 333 (1952). More recently, the Sixth Circuit has held that actions for injunctive relief, where the violation is not ongoing, and there is little danger of a recurring violation, are moot. *See Bowman v. Corrections Corp. of America*, 267 F.3d 477, 550 (6th Cir. 2003) (holding that an action for injunction is moot where it "has no impact on [the plaintiff's] legal interests"); *Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1029 (6th Cir. 1995) (holding that, for a past violation to be subject to injunctive relief, the plaintiff must show that "'there was a reasonable expectation that the *same* complaining party would be subject to the same action again'") (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982); *City of Romulus v. County of Wayne*, 634 F.2d 347, 348 (6th Cir. 1980) ("The activities which plaintiffs seek to enjoin are over, and we are not in a position to prevent what has already occurred.")

Although the plaintiff would like to style this action as a continuing violation, that is simply not the case. Assuming that the defendant did violate ERISA by making misrepresentations, that violation occurred when the those misrepresentations occurred, that is, when the defendant provided the plaintiff with incorrect estimates for his pension benefits. The plaintiff admits that the payments he receives each month are in accordance with the applicable plans and, therefore, it cannot be said that the defendant violates ERISA simply by making those

payments. Each day that the plaintiff remains uncompensated for his alleged reliance does not—although it may point to a glaring hole in ERISA's remedial provisions—constitute a new violation. There is no ongoing illegality to enjoin or declare.

Further, the plaintiff is in little danger of a recurring violation. He has already retired and is currently well aware of the amount that he is owed under his retirement plans. Any conceivable danger that the defendant might again cause the plaintiff to believe that he is owed more than he is in fact owed under the retirement plans is very remote indeed. The fact remains that the plaintiff's cause of action is legal, and not equitable. The plaintiff seeks compensation for his alleged reliance on false information provided to him by a fiduciary. The Supreme Court has construed ERISA in such a way as to preclude relief for that reliance—although it might have been available in another setting—and so it is precluded.

## III.    Failure to Provide Information Under ERISA

In addition, the plaintiff seeks statutory penalties under 29 U.S.C. § 1132(c)(1), which provides that:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

29 U.S.C. § 1132(c)(1). The plaintiff alleges that the defendant "fail[ed] or refuse[d] to comply with a request" for information because the plaintiff did not receive a response to its September 3, 2004 letter to Ford's Office of General Counsel requesting a copy of the applicable plan documents until June 8, 2005. An award of statutory damages under § 1132(c)(1) is within the

10

discretion of the court. *See Hiney Printing Co. v. Bratner*, 243 F.3d 956, 960 (6th Cir. 2001); *Jordan v. Tyson Foods, Inc.*, Slip Copy, 2006 WL 3694556 at *4 (M.D. Tenn. Dec. 13, 2006). The court declines to exercise that discretion for the following reasons.

First, the plaintiff has not demonstrated that his letter was sent to a plan administrator. As to who, exactly, was the plan administrator, the record does not directly say.[5] However, the Office of General Counsel does not appear to have been charged with administering Ford's General Retirement Plan. Instead, administration tasks appears to have fallen to the Ford General Retirement Plan Committee, a fact of which the plaintiff should have been aware, since the record includes communications from the Committee to the plaintiff. Day-to-day operations under the General Retirement Plan appear to have been delegated to the National Employee Service Center ("NESC"), a fact of which the plaintiff appears to have been aware from the numerous call logs between the plaintiff and the NESC in the record. The plaintiff does not assert that he requested documents directly from the NESC during any of those calls, and the call logs do not indicate any such request was made. Therefore, based on the record as it exists, the court is hard-pressed to find any individual plan administrator for whose actions it can hold the defendant liable for penalties, based, as they are, on a letter that the plaintiff alleges he sent to the defendant's Office of General Counsel. *See Hiney Printing Co.*, 243 F.3d at 961 ("[The plaintiff] . . . offers no binding case law from this Circuit to support her assertion that a plan

---

[5]In his affidavit, Kenneth Mitchell does state that he is "currently employed by Ford Motor Company to administer the Ford General Retirement Plan." (Docket No. 22 at p. 1). However, the court does not take Mr. Mitchell's statement to mean that he, personally, is the plan administrator for the General Retirement Plan. Regardless, the plaintiff does not allege to have sent a letter to Mr. Mitchell requesting any plan documents, nor to any other person employed by Ford to administer its plans.

11

administrator may be held liable based on information requests directed to someone other than the administrator.")

Second, the plaintiff has shown no prejudice from the delay incurred in receiving the documents. The plaintiff cannot reasonably suggest that his retirement decision was affected by this delay, for the reason that he did not make the request until September 3, 2004, approximately one year and six months after he retired. The plaintiff's suggestion that he might have been able to reverse his retirement decision at that time, without further support, is fanciful at best. No facts in the record indicate that retirement "reversal" was a possible course of action in September 2004. In the absence of any realistic prejudice, the court does not find the alleged failure to respond an appropriate case for awarding statutory penalties. *See Jordan v. Tyson Foods, Inc.*, 2006 WL 3694556 at *4 (according weight to the lack of demonstrable prejudice in denying the plaintiff's request for statutory penalties under 29 U.S.C. § 1132(c)(1)).

Finally, the court notes the hesitance other circuits have shown in reading the § 1132(c)(1) disclosure requirements broadly "when a violation could trigger a statutory penalty of $100 a day." *Id.*, citing *Doe v. Travelers Ins. Co.*, 167 F.3d 53, 60 (1st Cir. 1999); *Groves v. Modified Retirement Plan*, 803 F.2d 109, 117-19 (3d Cir. 1986); *Verkuilen v. Southshore Bldg. & Mort. Co.*, 122 F.3d 410, 412 (7th Cir. 1997); *Anderson v. Flexel Inc.*, 47 F.3d 243, 248 (7th Cir. 1995). Accordingly, the court will grant summary judgment as to the plaintiff's request for statutory penalties under § 1132(c)(1).

## CONCLUSION

For the reasons stated herein, the defendants' Motion for Summary Judgment will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

13